# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

GILBERT SALGUERO,

     Plaintiff,

v.                                       Civil No. 02-319 WJ/LCS

THE CITY OF CLOVIS,

     Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court pursuant to Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on Counts I, II, and III [Docket No. 48]. Having reviewed the submissions of the parties and being otherwise fully advised, I find that Defendant's motion is well taken and will be granted.

## BACKGROUND

Plaintiff was a police officer with the City of Clovis. He was hired on or about December 1, 1985.[1] In April 2001, or shortly thereafter, Lt. Dan Blair of the Clovis Police Department (CPD) reported to his supervisors that Officer Al Lewis, also of CPD, was involved in obtaining cards to illegally access satellite television without paying for it. Lieutenant Dan Blair had known

---

[1] This date originates from Plaintiff's Complaint. Defendant asserted this as an undisputed material fact in its motion. Plaintiff's response disputed this and contended that Plaintiff was actually hired in November 1985. Plaintiff put forward the date of December 1, 1985 in his Complaint and cannot now create a disputed issue by disputing his own admissions. In any event, the actual date of hire, even if disputed, is not an issue of material fact as it will not alter the outcome of the suit. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

of Officer Al Lewis' access to free satellite television for at least two years prior to April 2001 but did not report it until April 2001 after a citizen asked Lt. Blair whether a person could get into trouble if he got Officer Lewis to hook him up with a card for free satellite access.

After Lt. Blair reported this information to his supervisors, he was assigned to conduct a criminal investigation into allegations that police officers were illegally receiving free satellite television.  Lt. Blair began by identifying every employee of CPD who had satellite television and then began interviewing each identified employee.

On or about August 14, 2001, Lt. Blair began interviewing employees.  Between August 14 and August 18, Lt. Blair, along with an assisting officer, interviewed sixteen members of the CPD including Plaintiff.   The first interview of Plaintiff occurred on August 14, 2001.  Plaintiff was not read his Miranda rights before this interview, and the interview was not tape recorded. On August 15, 2001, Lt. Blair contacted Plaintiff by telephone to ask him some additional questions.  This interview was not tape recorded, and Plaintiff was not given any Miranda warning.  Plaintiff was interviewed again on August 18, 2001.  Plaintiff was ordered to participate in the interview but was informed at the interview of his Miranda rights including his rights to remain silent.  This interview was tape recorded.  During this interview, Plaintiff admitted that he had used a website to obtain satellite access cards from Canada, that he obtained the cards for a relative, two friends, and two fellow police officers, that it was common knowledge in CPD that he could assist others to obtain cards and that he knew the activity was wrong and illegal.

On September 7, 2001, pursuant to a written "Disciplinary Action Record" prepared September 5, 2001, Captain Mitchell met with Plaintiff.   Prior to the meeting, Plaintiff was given no notice of the subject of the meeting.  During the meeting, Mitchell informed Plaintiff that he

2

was recommending Plaintiff's termination and gave him written notice of this recommendation. Plaintiff's response and accompanying affidavit asserts that he was actually terminated at this meeting and was thus terminated without notice or any pre-termination opportunity to be heard. Plaintiff's Complaint, however,  alleges that he was terminated on September 27, 2001 and only alleges that his pre-termination procedures were inadequate.  An affidavit may not be disregarded simply because it conflicts with the affiant's prior sworn statements.   Lantec, Inc. v. Novell, Inc., 306 F.3d 1003, 1016 (10th Cir. 2002).  However, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue.  Id. (citing Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir.1986)).  In deciding whether an affidavit is an attempt to create a sham fact issue, the relevant factors are "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain."  Id.  In this case, Plaintiff's affidavit conflicts with the allegations in his Complaint rather than with a prior sworn statement.  However, the allegations in the Complaint are judicial admissions and are binding on Plaintiff.  See Cramer v. State of Florida, 117 F.3d 1258, 1264 (11th Cir. 1997); Missouri Hous. Dev. Com'n v. Brice, 919 F.2d 1306, 1314-15 (8th Cir. 1990); Ferguson v. Neighborhood Hous. Serv., 780 F.2d 549, 551 (6th Cir. 1986).  Plaintiff's affidavit in this case not only directly contradicts his own admission, but contradicts all of the documentary evidence regarding his termination.  Plaintiff offers no explanation for the conflict.  Therefore, I find that Plaintiff's conflicting affidavit testimony that he was fired on September 7 rather than on September 27, 2001 is an attempt to create a sham fact issue. Accordingly, I will disregard Plaintiff's affidavit

3

and find that Mitchell notified Plaintiff on September 7, 2001 that his termination was being recommended, and that Plaintiff was not actually terminated until September 27.

The notice Plaintiff was given provided him with a list of the reasons for the recommendation, provided him with a list of the statutes and regulations he violated  and informed him of his right to appeal the recommendation through various layers of the chain of command beginning with Deputy Chief Bartosiewicz.  Plaintiff had no opportunity before or during the meeting to look at evidence against him, hear witnesses, or bring witnesses on his own behalf.

Plaintiff appealed the recommendation to Deputy Chief Bartosiewicz.  Plaintiff met with Bartosiewicz on or about September 14, 2001.  Plaintiff was not given a copy of the written investigation report, a copy of the transcript of his own taped statement, or the officer's statements against him.  He was not able to cross-examine witnesses or call witnesses on his own behalf.  In a memorandum dated September 18, 2001, Bartosiewicz informed Plaintiff that he concurred with Captain Mitchell's recommendation.

Plaintiff then appealed the recommendation to Chief of Police Carey.  Plaintiff was not permitted to produce relevant documents, witnesses, or other evidence to support his case.  Nor was Plaintiff permitted to cross-examine adverse witnesses.  In a memorandum dated September 27, 2001, Chief Carey informed Plaintiff that he was upholding the recommendation for termination.  Chief Carey provided Plaintiff with a list of reasons for upholding the recommendation and citations to state, federal, and local laws the Chief felt had been violated by Plaintiff.  Plaintiff was actually terminated effective September 27, 2001.

Plaintiff appealed his termination to Nancye Clements, Personnel Director for the City of Clovis.  Plaintiff met with Ms. Clements in her office on or about October 23, 2001 to address his concerns about his termination from CPD.  On November 1, 2001, Ms. Clements wrote a letter to Plaintiff informing him that she was upholding the termination.  She stated that the level of discipline administered to each person involved was based on the severity of their involvement and that Plaintiff was terminated because his involvement was the most severe.

Plaintiff then appealed his termination to Assistant City Manager Joe Thomas.[2]  Plaintiff was given a hearing before Mr. Thomas on or about November 19, 2001.  Plaintiff was not given copies of statements made by others during the investigation.  He was not permitted to call witnesses, and he was not permitted to cross-examine witnesses.  In a letter dated November 29, 2001, Mr. Thomas informed Plaintiff that he was upholding the termination.  Mr. Thomas' decision was based on information provided to him by Plaintiff in addition to a review of the investigation and the transcripts of interviews.  Mr. Thomas concluded that Plaintiff received money from others for what he knew, by his own admission, to be illegal activity.

Plaintiff then appealed his termination to the City of Clovis Grievance Board.  Section 2.64.090 of the City Personnel Code states that the Grievance Board will consist of five members.  However, Section 1105 of the City of Clovis Policy Manual states that the Grievance Board should consist of eleven members.  The Grievance Board that heard Plaintiff's appeal consisted of five members.  Four of the members were city employees and one member was a City Councilor.

---

[2]Plaintiff actually appealed to the City Manager Raymond Mondragon.  Mr. Mondragon, however, recused himself and the appeal was heard by the Assistant City Manager.

5

The case for upholding Plaintiff's termination was presented to the Board by the City Manager. The four city employee members of the Grievance Board were subordinates of the City Manager.

The Grievance Board hearing was held January 18, 2002.  Plaintiff was represented by counsel at the hearing.  The Grievance Board explained to Plaintiff that he had (1) a right to appear before the Board with or without counsel; (2) the right to call any witness whose testimony would materially contribute to his case so long as the testimony was not cumulative and personal appearance is essential to a fair determination such that written or recorded testimony is not sufficient; (3) the right to submit to an examination by the board; and (4) the right to submit any evidence for the Board to consider.  The Board explained that, while Plaintiff had the right to call witnesses, the Board had no subpoena powers to compel the attendance of witnesses. Plaintiff was given copies of other officers' statements at the hearing, but was not given these in advance of the hearing.  Some of the officers who testified at the hearing refused to answer some questions.  Plaintiff called seven witnesses during the hearing.

During Plaintiff's testimony, he admitted to providing other police officers with access cards, to conducting one transaction while on duty, and to informing others how to obtain cards from the internet.  He testified that he knew his actions were wrong and that he did not know of anyone in CPD with greater involvement in the illegal activity than himself.  Other testimony heard by the Board included testimony that only Plaintiff and one other officer had distributed cards or received any money for the cards.  Testimony before the Board also indicated that only Plaintiff had sent money orders out of the state to obtain cards and searched at pawn shops for cards to reprogram.  The Chief of police testified that Plaintiff's conduct in the activity was more involved and more serious than that of other CPD employees.  Evidence before the Board showed

that seven other officers were involved in illegal activity involving satellite access.  Plaintiff was the only Hispanic officer among those found to be involved in illegal satellite access.  Only Plaintiff was terminated.

During closing statements, Plaintiff's counsel argued that his termination was disproportional compared to the discipline received by others.  Additionally, Plaintiff argued that he was the only Hispanic person to be terminated and his termination was the result of discrimination.

On January 25, 2002, the Grievance Board issued its "Findings, Conclusions, and Decision."  Plaintiff's grievance was denied, and the termination of Plaintiff's employment was upheld.  The Grievance Board made findings that included (1) Plaintiff arranged for others to obtain satellite television access cards or to re-program existing cards in order to obtain free satellite television programming; (2) Plaintiff knew that these activities were criminal violations of both state and federal law; (3) no other CPD employee was involved in re-programming or obtaining illegally re-programmed cards; (4) no other CPD employee distributed illegal satellite cards except for one officer who acted as a conduit for Plaintiff on one occasion; (5) all other CPD employees involved in the use of illegal satellite access cards were end users or conduits for Plaintiff; and (6) Plaintiff was the organizer and solicitor of illegal re-programming activities.  The Board reached the conclusion that the level and degree of Plaintiff's involvement in illegal activity justified more severe punishment of Plaintiff than of other officers.  The conclusions of the Grievance Board included that (1) all procedural steps were fully met and the grievance appeal was properly before the Board; (2) the termination of Plaintiff was justified, appropriate, and

supported by substantial evidence; and (3) there was no evidence of bias, prejudice, or discriminatory action or motive by any supervisor, manager, administrator, or City official.

Plaintiff avers that the Board's findings and conclusions are incorrect because other employees of CPD were equally or more involved than Plaintiff in the activities surrounding the satellite television access cards. Plaintiff attests that all of these activities occurred years before the investigation and his termination.  He also maintains that all of his illegal activities, with the exception of one transaction, occurred while he was off duty and did not interfere with his job in any way.

On or about January 29, 2002, Plaintiff attempted to appeal the decision of the Grievance Board to the City Commission.  On January 30, counsel for the City of Clovis informed Plaintiff that an appeal to the Grievance Board is the final step in the grievance process, and any further review should be directed to the state district court for review of an administrative action.

Plaintiff did not seek review of the Board's determinations in state court.  Instead, Plaintiff filed his complaint in federal court on March 21, 2001.  The complaint brings three claims.  Count I is a state law claim for breach of contract.  In this count, Plaintiff alleges that he had an employment contract with the City of Clovis that included a just cause standard for termination and that the City breached this contract when it wrongfully terminated him without just cause and treated him differently than other similarly situated employees.  Count II is a claim under 42 U.S.C. § 1983.  In Count II, Plaintiff alleges that Defendant City of Clovis subjected Plaintiff to dismissal without due process of law, in violation of the 14th Amendment, when it failed to provide Plaintiff with adequate pre-termination and post termination protections.  Count III is a

claim under 42 U.S.C. § 1981.  In this count, Plaintiff alleges that Defendant intentionally discriminated against him in his contractual employment relationship on the basis of his race.

Defendant City of Clovis filed a motion to dismiss, or alternatively, motion for summary judgment.  Defendant's first argument is that this Court should dismiss Plaintiff's case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the basis of collateral estoppel. Should the Court decline to dismiss the entire case on collateral estoppel grounds, Defendant asserts it is entitled to have each of the claims dismissed for various reasons.  With regard to Count I, Defendant argues that the Court should dismiss it in accordance with Fed. R. Civ. P. 12(b)(6) because the claim does not meet the minimal notice pleading requirements under Fed. R. Civ. P. 8.  With regard to Count II, Defendant makes a similar argument for dismissal under Rule 12(b)(6) on the basis of Plaintiff's failure to articulate the precise nature of his due process claim. Alternatively, Defendant seeks summary judgment on this claim on the basis that Plaintiff cannot make a requisite showing for municipal liability and cannot show a constitutional violation.  With regard to Count III, Defendant argues it is entitled to summary judgment on the basis that Plaintiff cannot make a requisite showing for municipal liability and on the basis that Plaintiff cannot show that the nondiscriminatory reason Defendant articulated for Plaintiff's termination is a pretext for discrimination.

**LEGAL STANDARD**

A party may go beyond the allegations contained in the complaint and challenge the facts upon which jurisdiction depends.  Sizova v. Nat'l Inst. of Standards & Tech., 282 F3d 1320, 1324-25 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  A court

has wide discretion to allow affidavits or other documents to resolve disputed jurisdictional facts

under Rule 12(b).  Sizova, 282 F.3d at 1324-25; Holt, 46 F.3d at 1003.

When a court considers a motion to dismiss for failure to state a claim, all well-pleaded

factual allegations of the complaint are accepted as true and viewed in the light most favorable to

the nonmoving party.  Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th

Cir. 1999).  All reasonable inferences raised in the pleadings are resolved in favor of the plaintiff.

Dill v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir. 1998).  "A 12(b)(6) motion should not be

granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief."  David v. City and County of Denver, 101 F.3d 1344,

1352 (10th Cir. 1996).

Summary judgment is appropriate when there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law.  Worrell v. Henry, 219 F.3d 1197,

1204 (10th Cir. 2000).  In ruling on a motion for summary judgment, a Court does not weigh the

evidence, but determines whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Jeffries v. State of Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998).  In making this determination,

the Court must construe all the facts in the record and reasonable inferences that can be drawn

from those facts in a light most favorable to the nonmoving party.  Worrell, 219 F.3d at 1204;

Jeffries, 147 F.3d at 1228.

## DISCUSSION

I.      DOES THIS COURT LACK SUBJECT MATTER JURISDICTION OVER
        PLAINTIFF'S CLAIMS BASED ON THE DOCTRINE OF COLLATERAL
        ESTOPPEL?

Defendant's first argument is that the findings and conclusions of the Grievance Board should be given preclusive effect under the doctrine of collateral estoppel. Further, Defendant asserts that the doctrine of collateral estoppel deprives this Court of subject matter jurisdiction. This Court finds no authority for the proposition that issue preclusion is jurisdictional such that its application will deprive a court of subject matter jurisdiction. Accordingly, even if the doctrine of collateral estoppel applies in this case, it is not properly decided on a Rule 12(b)(1) motion. In order to determine the applicability of the doctrine, this Court must necessarily consider matters outside the pleadings. Thus, the motion, insofar as it argues for dismissal based on the application of the doctrine of collateral estoppel, will be treated as one for summary judgment. Fed. R. Civ. P. 12(b).

Federal courts must give a state agency's determinations the same preclusive effect to which they would be entitled in the State's courts if the agency (1) was acting in a judicial capacity; (2) resolved disputed issues of fact properly before it; and (3) the parties had an adequate opportunity to litigate the issues in dispute. Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986); Zimmerman v. Sloss Equip., Inc., 72 F.3d 822, 826 (10th Cir. 1995); Atiya v. Salt Lake County, 988 F.2d 1013, 1019 (10th Cir. 1993); See also Restatement (Second) of Judgments § 83 (1982). The doctrine of collateral estoppel applies to issues of law as well as issues of fact unless a question of law involves unrelated subject matter. Jarvis v. Nobel/Sysco Food Serv. Co., 985 F.2d 1419, 1425 (10th Cir. 1993). Even if the Court finds that all three prongs of the Elliott test are satisfied, the Court cannot give preclusive effect to the agency's determinations unless it also finds that New Mexico state courts would give them preclusive effect.

11

A.      Must This Court Give the Agency's Determinations the Same Preclusive Effect to Which it Would be Entitled in a New Mexico State Court?

Plaintiff urges that this Court should not give preclusive effect to the findings of the Grievance Board because the Board was not properly constituted, the Board was biased, and the Plaintiff did not have an adequate opportunity to litigate issues before the Board.  The arguments that the Board was not properly constituted and that the Board was biased attack the first prong of the Elliot inquiry and essentially allege that the Board was not acting in a judicial capacity when it heard Plaintiff's appeal.  See Hall v. Marion Sch. Dist. Number 2, 31 F.3d 183, 191 (4th Cir. 1994) ("Acting in a judicial capacity requires that an individual in an administrative hearing be afforded an impartial tribunal.").  Plaintiff's assertion that he did not have an adequate opportunity to litigate issues before the Board obviously attacks the third prong of the Elliott inquiry.

The Grievance Board was constituted pursuant to the Personnel Code which the City of Clovis had authority to enact by ordinance pursuant to New Mexico state law.  See N.M. Stat. Ann. 1978 § 3-13-4 (authorizing municipalities to establish merit systems and personnel boards to establish methods of employment, promotion, demotion, suspension and discharge of municipal employees);§ 3-17-6 (authorizing municipalities to adopt codes by ordinance); See also § 3-17-5 (giving further legitimacy to codified city ordinances by stating that a codification of ordinances is prima facie evidence that an ordinance has been published); Saavedra v. City of Albuquerque, 73 F.3d 1525 (10th Cir. 1996).  In accordance with state law, the Personnel Code establishing the Board also sets forth the method of appointment, number of members, and terms of office.  § 3-13-4(B).

Plaintiff points to a City of Clovis Policy Manual which indicates a different number of members for the Grievance Board than what is set out in the Personnel Code.  Plaintiff argues that the Board was not duly constituted because it did not follow the Policy Manual in terms of the number of its members.  The Personnel Code is clearly enacted pursuant to and in accordance with state law.  Conversely, the Policy Manual was not enacted by city ordinance in accordance with state law and does not govern the membership of the Grievance Board.  Because the membership of the Grievance Board hearing Plaintiff's appeal complied with the Personnel Code, I find that the Grievance Board was duly constituted under New Mexico state law.

Plaintiff argues that the Board was not acting in a judicial capacity because it was biased. In order to show bias for purposes of the federal law inquiry under Elliott, Plaintiff must either show that actual bias existed or that the appearance of bias created a conclusive presumption of actual bias.  Phelps v. Hamilton, 122 F.3d 1309, 1323 (10th Cir. 1997).  Plaintiff's assertion of bias is based solely on the fact that four of the five members of the Board were City employees and thus subordinate in their employment to the City Manager who represented the City's position in favor of Plaintiff's termination at the hearing.  This is no evidence of actual bias and the fact that four of the five members of the Board were City employees subordinate to the City Manager simply does not create any presumption, conclusive or otherwise, of bias.  See Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 519-20 (10th Cir. 1998).  Having found that the Grievance Board was acting pursuant to its powers and authority under state law, and having found that the Board was not biased, I find that the Grievance Board was acting in a judicial capacity when it heard Plaintiff's appeal and upheld Plaintiff's termination.

The Grievance Board made findings and conclusions necessary to address whether the termination of Plaintiff's employment should be upheld.  I find, and Plaintiff does not urge otherwise, that the issues that were actually resolved by the Board were properly before the Board.

Plaintiff contends that he did not have an adequate opportunity to litigate the issues before the Board.  As noted above, Plaintiff was represented by counsel at the hearing, was able to call witnesses, cross examine witnesses, and present evidence.  Plaintiff's contention that this did not provide him an adequate opportunity to litigate the issues before the Board is based on the Board's lack of power to issue subpoenas or compel the testimony of witnesses.  Plaintiff does not elucidate how this impeded his ability to litigate the issues before the Board.  Moreover, the courts that have addressed this issue in similar circumstances have all found that an administrative proceeding such as the one here did provide an adequate opportunity to litigate.  See Saavedra, 73 F.3d at 1533-35 (finding that collateral estoppel and res judicata applied to a personnel board's decision upholding a firefighter's termination for smoking marijuana when the employee was represented by counsel at his post-termination hearing, had an opportunity to present witnesses and evidence, was able to cross-examine witnesses, and admitted to smoking marijuana during his own testimony at the hearing); Atiya, 988 F.2d at 1019 (finding that the plaintiff had an adequate opportunity to litigate during a hearing in which she was represented by counsel, made opening and closing statements, was able to call witnesses and cross-examine witnesses, and was able to introduce exhibits).  Therefore, I find that Plaintiff had an adequate opportunity to litigate the issues before the Grievance Board.  Consequently, this Court must give the same preclusive effect

14

to the findings of the Grievance Board as these findings would be entitled to in a state court in New Mexico.

        B.       <u>Would a New Mexico State Court Give Preclusive Effect to the Determinations of the Grievance Board?</u>

New Mexico courts apply the doctrine of collateral estoppel to preclude the relitigation of issues resolved in an administrative agency adjudicative decision.  <u>Shovelin v. Central New Mexico Elec. Coop., Inc.</u>, 850 P.2d 996, 1001 (N.M. 1993).  Under New Mexico law,  in order to apply the doctrine of collateral estoppel, the moving party must first show that (1) the party to be estopped was a party or privy to the prior proceeding; (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication; (3) the issue was actually litigated in the prior adjudication; and (4) the issue was necessarily determined in the prior litigation.  <u>Rex, Inc. v. Manufactured Hous. Comm.</u>, 892 P.2d 947, 951 (N.M. 1995).  Once the moving party has made a showing of the elements necessary to apply the doctrine, the party opposing collateral estoppel may defeat application of the doctrine by showing that he or she was not afforded a full and fair opportunity to litigate the issue in the prior proceeding. <u>Padilla v. Intel Corp.</u>, 964 P.2d 862, 865 (N.M. App. 1998).

Here there is no dispute that the Plaintiff was a party to the hearing before the Grievance Board and that the cause of action presently before this Court is different than the cause that was before the Grievance Board.  Therefore, the questions to be resolved by this Court with regard to the prima facie showing for collateral estoppel are whether the issues were actually litigated and necessarily decided.

No New Mexico court has specifically and discreetly defined the "actually litigated" and "necessarily decided" elements for application of the doctrine of collateral estoppel.  When federal courts are called upon to interpret state law, they must look to rulings of the highest state court, and if no such rulings exist, must endeavor to predict how the high court would rule.  Johnson v. Riddle, 305 F.3d 1107, 1118 (10th Cir. 2002); Lampkin v. Little, 286 F.3d 1206, 1210 (10th Cir. 2002).  New Mexico state courts often turn to the Restatement (Second) of Judgments for guidance on both issue and claim preclusion. See Bogle Farms, Inc. v. Baca, 925 P.2d 1184, 1191 (N.M. 1996); Kepler v. Slade, 896 P.2d 482, 486 (N.M. 1995); Rex Inc., 892 P.2d at 952; Shovelin, 850 P.2d at 1001; Manlove v. Sullivan, 775 P.2d 237, 242 (N.M. 1989); Myers v. Olson, 676 P.2d 822, 824 (N.M. 1984).  The Restatement (Second) of Judgments states that an issue is actually litigated when it is properly raised, is submitted for determination, and is determined.  Restatement (Second) of Judgments § 27 comment d (1982).  An issue is necessarily decided if the judgment could not have been validly rendered in the absence of a determination of that issue.  Restatement (Second) of Judgments § 27.  If an issue has been determined, but the judgment is not dependent upon that determination, the issue was not necessarily determined and a party is not precluded from relitigating that issue.  Restatement (Second) of Judgments § 27 comment h.  I am of the opinion that the Supreme Court of the State of New Mexico would adopt these principles in order to define "actually litigated" and "necessarily decided" if faced with the issues before this Court.

Defendant asserts that the issues of procedural due process, discrimination, and just cause were actually litigated and necessarily decided by the Grievance Board.  With regard to procedural due process, the Board did conclude that all procedural steps had been met.  However,

it is clear that the Board was referring to the steps outlined in the City of Clovis personnel rules as a jurisdictional prerequisite to the Board's determination.  The Board did not have before it and did not determine the issue of the constitutional adequacy of the procedures afforded Plaintiff before and during the hearing before the Board.  Therefore, the issue of Plaintiff's procedural due process rights under the Fourteenth Amendment to the Constitution of the United States was not actually litigated before the Grievance Board.

With regard to the issue of discrimination, it is clear that the issue was actually litigated because Plaintiff argued to the Board that his termination was based on discrimination, and the Board concluded that there was no evidence of discrimination, prejudice, or bias with regard to Plaintiff's termination.  However, this issue was not necessarily decided.  The Board could have determined that Plaintiff's termination was justified in spite of any discriminatory motive on the part of a supervisor, manager, administrator or City official.  Because the Board's ultimate determination that Plaintiff's termination was justified was not dependent on a finding of nondiscrimination, the finding is not entitled to preclusive effect.

With regard to the issue of just cause for Plaintiff's termination, this issue was both actually litigated and necessarily decided by the Board in its determination that Plaintiff's termination was justified and appropriate based on Plaintiff's violation of City policy, department policy, state law, federal law, and his oath of office.  Thus, Defendant has made a prima facie showing that the doctrine of collateral estoppel should be applied to the determination of the Board that there was just cause for Plaintiff's termination.

Plaintiff asserts that he did not have a full and fair opportunity to litigate the issue of just cause at the hearing.  I find that Plaintiff's contention is without merit as he was represented by

17

counsel at the hearing, was able to call witnesses, cross examine witnesses and present evidence. Therefore, the New Mexico courts would apply the doctrine of collateral estoppel to the Board's determination of just cause, and this Court must do so as well.  Plaintiff may not relitigate the issue of whether there was just cause for his termination.

      C.    <u>What Effect Does Application of the Doctrine of Collateral Estoppel Have on Plaintiff's Claims?</u>

Having decided that the doctrine of collateral estoppel applies to bar Plaintiff from relitigating whether there was just cause for his termination, the Court must now determine whether this entitles Defendant to dismissal of all claims.  Plaintiff's claim in Count I alleges that Plaintiff's employment was covered by an employment contract, that the contract included a just cause standard for his termination, and that Defendant breached the contract by terminating him without just cause.  A verdict for Plaintiff on this claim would be dependent on a determination that Plaintiff was terminated without just cause.  Because Plaintiff is barred from relitigating this issue, Plaintiff cannot, under any circumstances, prevail on this claim.  Therefore, Defendant is entitled to summary judgment on Count I based on the doctrine of collateral estoppel.[3]

Plaintiff's claim in Count II is a claim under 42 U.S.C. § 1983.  Plaintiff urges that the nature of § 1983 prevents the application of the doctrine of collateral estoppel.  In <u>Elliott</u>, the Supreme Court reversed a Sixth Circuit decision that a state administrative determination could not be given preclusive effect with regard to claims brought pursuant to § 1983 and other Reconstruction civil rights statutes.  478 U.S. at 798.  In doing so, the Court noted that

_____

[3]Having found that Defendant is entitled to summary judgment on Count I, the Court need not address Defendant's alternative argument that it is entitled to dismissal of this Count pursuant to Fed. R. Civ. P. 12(b)(6).

18

"[n]othing in the language of § 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion . . . ."  Elliott, 478 U.S. at 797 (citing Allen v. McCurry, 449 U.S. 90, 97-98 (1980)).  Thus, the fact that Count II is a claim under § 1983 does not foreclose the application of the doctrine of collateral estoppel.  See Long v. Laramie County Cmty. Coll. Dist., 840 F.2d 743, 751-52 (10th Cir. 1988).

Plaintiff's claim in Count II is obviously a claim for violation of his procedural due process rights for deprivation of his property interest in his employment.  The issue of just cause is not determinative of this claim so does not preclude it.

Plaintiff asserts that Count II also states claims for violation of his substantive due process rights.  In order to present a claim for denial of substantive due process, a plaintiff must have a protected liberty or property interest.  Brenna v. Southern Colorado State College, 589 F.2d 475, 476 (10th Cir. 1978).  Substantive due process requires only that deprivation of a protected interest not be arbitrary, capricious, or without rational basis.  Tonkovich, 159 F.2d at 528.  The determination that there was just cause for Plaintiff's termination precludes any substantive due process claim to the extent Plaintiff would attempt to prove that there was no rational basis for his termination.  There are also cases that support the conclusion that, when there is a rational basis for a decision, it is necessarily neither arbitrary nor capricious.  See e.g., Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198-99 (1979) (finding that a school board's termination of a teacher was not arbitrary and capricious when the plaintiff could not show that there was no rational basis for the board's decision); Curtis v. Oklahoma City Pub. Sch. Bd of Educ., 147 F.3d 1200, 1215-16 (10th Cir. 1998) (finding that defendants were entitled to summary judgment on a claim for arbitrary and capricious employment termination because the record could not support any finding

19

that the plaintiff was terminated for no reason). Thus, to the extent Count II states a substantive due process claim for deprivation of Plaintiff's property interest in employment, it is precluded by the application of the doctrine of collateral estoppel.

Plaintiff asserts that Count II also states claims for invasion of privacy, deprivation of his liberty interest in the termination of his employment, violation of his right to equal protection by discrimination on the basis of race and national origin, and violation of his Miranda rights. Whether these claims are properly before the Court is addressed later in this opinion; however, for purposes of collateral estoppel analysis, I will assume that these claims exist and will consider whether Defendant is entitled to summary judgment on such claims on the basis of collateral estoppel. While the Board's determination that there was just cause for Plaintiff's termination may be relevant to some of these claims, it is not conclusive with regard to any of them. Thus, collateral estoppel so does not preclude them.

Count III is a claim under 42 U.S.C. § 1981. As noted above, the Board's determination that there was just cause for Plaintiff's termination, while possibly relevant to the inquiry, did not necessarily decide that there was an absence of discriminatory motive for the decision. Therefore, Plaintiff's § 1981 claim is not precluded under a theory of collateral estoppel.

II.     IS DEFENDANT ENTITLED TO DISMISSAL OR, ALTERNATIVELY, SUMMARY
        JUDGMENT WITH REGARD TO COUNT II?

        A.     Is Defendant Entitled to Dismissal of Plaintiff's Claims in Count II Because
               Plaintiff has Failed to State Claims Upon Which Relief May be Granted?

To state a claim under Fed. R. Civ. P. 8(a)(2), the plaintiff must offer a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957). The Supreme Court

has emphasized that the requirements at the pleading stage are de minimus.  See Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002) (a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations); Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 104 (1998) (the court must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations).

Defendant argues that Plaintiff failed to adequately state a claim in Count II because the notice requirements of Fed. R. Civ. P. 8 are not met.  Plaintiff's response contends that Plaintiff has stated claims in Count II for (1) a procedural due process violation, (2) a substantive due process violation, (3) violation of the equal protection clause of the Fourteenth Amendment, (4) invasion of privacy, (5) deprivation of a liberty interest during the termination of Plaintiff's employment, and (6) violation of Miranda rights.

Plaintiff's Complaint clearly alleges a procedural due process violation by alleging that Plaintiff was not provided adequate pre-termination and post-termination protections.  Therefore, Defendant is not entitled to have this claim dismissed under Rule 12(b)(6) for failure to state a claim.

As noted above, a substantive due process claim is precluded under the doctrine of collateral estoppel.  Even if it were not precluded, Plaintiff's Complaint does not allege a substantive due process violation.   The only allegations that might are remotely related to such a claim are (1) the general factual allegation that Defendant terminated Plaintiff's employment without just cause; and (2) the allegation specific to Count II that Defendant terminated Plaintiff's employment without due process of law.  These allegations fail to meet even the minimal notice

pleading requirements of Rule 8 with regard a substantive due process claim.  Count II is not a

claim that can be read generally to encompass a variety of constitutional violations.  The language

in Count II is specific and targets procedural due process under the due process clause of the

Fourteenth Amendment for failure of Defendant to provide adequate pre-termination and post-

termination protections.  Nothing in the Complaint would have alerted Defendant to the need to

conduct discovery or defend with regard to a claim for a substantive due process violation.

Therefore, even if a substantive due process claim were not precluded by the Grievance Board's

determination of just cause, Defendant would be entitled to have a substantive due process claim

dismissed for failure to state a claim under Rule 12(b)(6).

Nothing in Plaintiff's Complaint mentions the equal protection clause of the Fourteenth

Amendment.  While Plaintiff clearly alleges that his termination was based on unlawful

discrimination on the basis of race, it also clearly alleges a claim based on discrimination in Count

III under 42 U.S.C. § 1981.  Again, the language of Count II is specifically targeted at an alleged

procedural due process violation and cannot be read generally to include various constitutional

violations not encompassed by the due process clause of the Fourteenth Amendment.  The

Complaint fails to meet the minimal notice requirements for an equal protection claim; Defendant

had no fair notice from the face of the Complaint of an equal protection claim.  Thus, Defendant is

entitled to have any such claim dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Nothing in Plaintiff's Complaint even hints at claims for invasion of privacy, deprivation of

a liberty interest, or violation of Miranda rights.  All of these claims are premised on factual

allegations asserted for the first time in Plaintiff's response.  For instance, the claim for a violation

of Plaintiff's right to privacy is premised on Plaintiff's factual contentions in his response that

22

Defendant revealed confidential investigation material to a private third party.  The claim for a

deprivation of a liberty interest is based on Plaintiff's assertions in his response that Defendant

injured his good name, reputation, honor and integrity when Defendant terminated his

employment.[4]  The claim for a violation of Plaintiff's Miranda rights is based on Plaintiff's

allegation in his response that he was interviewed by the police about his participation in criminal

activities without being given a Miranda warning.[5]  Because there is not even a remote allusion to

such allegations in the Complaint and no reference to the legal bases for these claims, nothing in

the Complaint would have given Defendant notice that it would need to conduct discovery on or

defend such claims.  Therefore, Defendant is entitled to have any such claims dismissed pursuant

to Fed. R. Civ. P. 12(b)(6).

      B.      <u>Is Defendant Entitled to Summary Judgment on the Claims in Count II?</u>

           1.      <u>Is Defendant Entitled to Summary Judgment on Count II on the Basis that Plaintiff Cannot Make the Requisite Showing for Municipal Liability?</u>

Local governmental entities may be held liable only for decisions made by officials who

have authority under state law to speak as final decision makers on a particular issue.  <u>Ware v.

Unified Sch. Dist. No. 492</u>, 902 F.2d 815, 817 (10th Cir. 1990).  Under New Mexico law, the

Grievance Board has the final decision making authority with respect to the discharge of an

---

    [4]A public employee has a liberty interest in (1) the protection of his good name, reputation, honor and integrity, and (2) his freedom to take advantage of other employment opportunities.  <u>Miller v. City of Mission, Kansas</u>, 705 F.2d 368, 373 (10th Cir. 1983).

    [5]Even if Plaintiff had adequately alleged a § 1983 claim for a Miranda violation, Tenth Circuit law is clear that there is no claim under § 1983 for a Miranda violation.  <u>Bennett v. Passic</u>, 545 F.2d 1260, 1263 (10th Cir. 1976) (stating that the <u>Miranda</u> decision does not suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability and holding that a failure to give a Miranda warning does not subject a police officer to liability under the Civil Rights Act).

employee of the City of Clovis.  See N.M. Stat. Ann. 1978 § 3-13-4.  A board such as the

Grievance Board in this case may not be held liable under the theory of Respondeat Superior.

Curtis v. Oklahoma City Pub. Sch. Bd. Of Educ., 147 F.3d 1200, 1216 (10th Cir. 1998).  There

must be a direct causal link between the acts of the board and the alleged constitutional

deprivation.  Ware, 902 F.2d at 819.  However, a board may be liable under § 1983 for its own

decision to terminate Plaintiff's employment if Plaintiff can show that the board exercised its

decision-making authority with deliberate indifference to Plaintiff's constitutional rights.  Id.

        In Ware, the Tenth Circuit held that there was sufficient evidence of deliberate indifference

to create a jury question.  902 F.2d at 820.  In that case, board members knew of the

circumstances giving rise to the possibility of a constitutional violation and knew that the plaintiff

believed she had been terminated in violation of her constitutional rights.  In addition, one board

member testified that he believed the motive for the plaintiff's termination was unconstitutional,

and the board discussed the possibility that the reason given for her termination was invalid.

Conversely, in Curtis, the Tenth Circuit found that there was insufficient evidence of deliberate

indifference to create a genuine issue of material fact on the issue of deliberate indifference.  147

F.3d at 1216.  The court found that there was no evidence that board members knew of

circumstances giving rise to the possibility of a constitutional violation or knew that the plaintiff

believed his termination was in violation of his rights.

        In this case, Board Members knew that Plaintiff was Hispanic, knew that Plaintiff was the

only Hispanic officer terminated for his involvement in obtaining illegal satellite service, and knew

that Plaintiff believed his termination was unconstitutional based on race or national origin

discrimination.  Thus, there is a disputed issue of material fact with regard to the issue of

deliberate indifference, and Defendant is not entitled to summary judgment on Plaintiff's § 1983 claims on the basis that Plaintiff cannot make the requisite showing for municipal liability.

        2.      <u>Is Defendant Entitled to Summary Judgment on Count II on the Basis that Plaintiff Cannot Show a Constitutional Violation?</u>

        a.      <u>Procedural Due Process</u>

The essential elements of due process are notice and an opportunity to be heard. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985). The Due Process Clause does not dictate any single model, method, or form of procedure. <u>Scroggins v. Kansas</u>, 802 F.2d 1289 (10th Cir. 1986) (citing <u>Kremer v. Chemical Constr. Corp.</u>, 456 U.S. 461, 483 (1982)). While a pretermination hearing is necessary, it need not be elaborate. <u>Loudermill</u>, 470 U.S. at 545. It need only be an initial check against mistaken decisions. <u>Id.</u> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the evidence, and an opportunity to present his side of the story. <u>Id.</u> at 546. While Plaintiff's failure to avail himself of his right to appeal Grievance Board's determination to the state district court does not preclude him from bringing his § 1983 claim, the availability of judicial review is relevant to the question of what procedures Plaintiff was afforded. <u>Tonkovich v. Kansas Bd. Of Regents</u>, 159 F.3d 504, 519 (10th Cir. 1998).

Plaintiff was given notice that his termination was being recommended on September 7, 2001. He was given a list of the reasons for the recommendation and had a meeting in person to discuss the recommendation. Plaintiff was afforded two pre-termination appeals of the recommendation that included an opportunity to present his side of the story. Following his termination, Plaintiff availed himself of three additional opportunities to appeal the termination

and chose not avail himself of the opportunity to seek judicial review.  His third post-termination

appeal was a hearing in which Plaintiff was represented by an attorney, called witnesses, presented

evidence, and was able to cross-examine witnesses.  Plaintiff's complaints with regard to the

procedure afforded him are similar those made by the Plaintiff in Tonkovich.  See 159 F.3d at

520-21.  I find that Plaintiff simply provides no evidence from which a reasonable fact finder

could conclude that he was not provided all the procedural protections he was due in accordance

with the Due Process Clause both prior to and after his termination.  Therefore, Defendant is

entitled to summary judgment on Plaintiff's § 1983 claim for a violation of procedural due

process.

b.    <u>Substantive Due Process</u>

Assuming that Plaintiff had a property or liberty interest deserving of substantive due

process protection under the Fourteenth Amendment, substantive due process requires that his

termination not be arbitrary, capricious, or without a rational basis.  Tonkovich, 159 F.3d at 528.

> [T]he standard for judging a substantive due process claim is whether the
> challenged government action would shock the conscience of federal judges.  To
> satisfy this standard, a plaintiff must do more than show that the government actor
> intentionally or recklessly caused injury to the plaintiff by abusing or misusing
> government power.  Instead, a plaintiff must demonstrate a degree of
> outrageousness and a magnitude of potential or actual harm that is truly
> conscience shocking.

Id. (internal quotations and citations omitted).

Plaintiff simply does not offer any evidence upon which any reasonable jury could find that

Defendant acted in a sufficiently outrageous manner to have violated Plaintiff's substantive due

process rights.  Even if Defendant had not been entitled to summary judgment on any substantive

due process claim on the basis of collateral estoppel and, alternatively, dismissal on the grounds

26

that Plaintiff's Complaint failed to state a claim for a substantive due process violation, Defendant would be entitled to summary judgment on any such claim because there is no disputed issue of material fact, and Defendant is entitled to judgment as a matter of law.

c. <u>Equal Protection Claim</u>

The Equal Protection Clause embodies the general rule that states must treat like cases alike but may treat unlike cases accordingly.  <u>Tonkovich</u>, 159 F.3d at 532.  "Unless a legislative classification or distinction burdens a fundamental right or targets a suspect class, courts will uphold it if it is rationally related to a legitimate end.  <u>Id.</u> (internal citation omitted).  If a fundamental right is not at stake and a Plaintiff is not a member of a suspect class, he must show that he was treated differently than others who were similarly situated, and that the different treatment lacked a rational basis.  <u>Id.</u>

I have already determined that Defendant is entitled to dismissal of any equal protection claim based on Plaintiff's failure to state such a claim in his Complaint.  However, assuming  an equal protection claim, the Court will consider whether Defendant would be entitled to summary judgment on such claim.

Unlike the plaintiff in <u>Tonkovich</u>, Plaintiff here is a member of a suspect class based on race or national origin.  In order to survive summary judgment on an equal protection claim alleging a race based distinction, Plaintiff must show that the distinction targets a suspect class. Accordingly, Plaintiff must show that the Board's decision to uphold his termination was a determination targeting Plaintiff's race or national origin.  In other words, Plaintiff must show intentional discrimination.  <u>Batson v. Kentucky</u>, 476 U.S. 79, 93 (1986); <u>Firefighters Local Union No. 1784 v. Stotts</u>, 467 U.S. 561, 583 n. 16 (1984).

27

Courts that have addressed cases similar to Plaintiff's have found that claimants alleging discrimination under § 1983 and the Equal Protection Clause are entitled to the same opportunity to prove intentional discrimination as claimants making similar claims under § 1981 and Title VII. See Hicks v. St. Mary's Honor Ctr., 970 F.2d 487, 490-91 (8th Cir. 1992) (finding that the elements of an employment discrimination claim under § 1983 are the same as those under Title VII) overruled on other grounds by St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1992). Thus, such claimants may prove intentional discrimination directly or may rely on the McDonnell Douglas standard to make a prima facie showing. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506 n.1; Honorable Charles R. Richey, Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts § 4:85 (2d ed. 1994-1996).

For reasons that are clearly explained below in the analysis of Plaintiff's § 1981 claim, I find that Plaintiff cannot make a showing of intentional discrimination. Thus, Defendant is entitled to summary judgment on any equal protection claim that Plaintiff may have stated in his Complaint.

III.    IS DEFENDANT ENTITLED TO SUMMARY JUDGMENT WITH REGARD TO COUNT III?

In order to succeed on a claim of discrimination under § 1981, Plaintiff must show intentional discrimination. Perry v. Woodward, 199 F.3d 1126 (10th Cir. 1999). A plaintiff may prove discriminatory intent either directly or indirectly. Jones v. Denver Post Corp., 203 F.3d 748 (10th Cir. 2000). When a Plaintiff is attempting to show discriminatory intent by an indirect showing, the McDonnell Douglas burden shifting framework guides the Court's analysis at the

summary judgment stage.  Kendrick v. Penske Transp. Serv., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000).

Under the McDonnell Douglas framework, a plaintiff bears the initial burden of establishing a prima facie case of racial discrimination.  Id.  Once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its employment decision.  If a defendant meets this burden, the burden then shifts back to the plaintiff to show that the defendant's proffered reason for the employment decision is a pretext for discrimination.

In McDonnell Douglas v. Green, the Supreme Court enumerated the elements required in order for a plaintiff to establish a prima facie case in a failure to hire context.  411 U.S. 792, 802 (1973).  In that case, the Court stated that the elements of a prima facie case are 1) that plaintiff belongs to a protected class; 2) that plaintiff applied and was qualified for a job for which the employer was seeking applicants; 3) despite being qualified, the plaintiff was rejected; and 4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons with plaintiff's qualifications.  The Supreme Court did recognize that the articulation of the elements of a prima facie case would vary somewhat depending on the context  of a particular case, and the Tenth Circuit has often discussed the need to view the elements of a prima facie case in a flexible manner.  See Perry, 199 F.3d 1126.  However, the essential purpose of the prima facie case remains the same.  Kendrick, 220 F.3d at 1227.  The "prima facie case serves to eliminate the most common nondiscriminatory reasons . . ." for adverse employment action.  Id. In disparate discharge cases such as Plaintiff's, the prima facie elements frequently articulated are that 1) plaintiff is a member of a protected class; 2) plaintiff was qualified for her job; 3) despite

29

her qualifications, plaintiff was terminated; and 4) plaintiff's position was not eliminated after her discharge.  Kendrick, 220 F.3d at 1229.  The fourth element may also be met by a showing that plaintiff was treated less favorably than others not in the protected class.  Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir. 1998).  "The burden of establishing a prima facie case of disparate treatment is not onerous."  Brinkley-OBU v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994).

Here, Defendant does not argue that Plaintiff has failed to make a prima facie showing of discrimination.  Rather, Defendant argues that Plaintiff fails to show that Defendant's proffered reason for terminating Plaintiff is a pretext for discrimination.  Thus, the Court will assume for purposes of this motion that Plaintiff has met the elements of a prima facie showing of discrimination under the McDonnell Douglas framework.

The burden is thus on Defendant to articulate some legitimate nondiscriminatory reason for terminating Plaintiff's employment.  Defendant asserts that it terminated Plaintiff's employment because he knowingly engaged in illegal activity, assisted others in engaging in illegal activity, solicited the assistance of others in the illegal activity, and engaged in more severe conduct than other CPD employees who engaged in the illegal activity.  Defendant has therefore met its burden of articulating a legitimate nondiscriminatory reason for terminating Plaintiff's employment.

The burden has thus shifted to Plaintiff to show that Defendant's proffered reason for terminating Plaintiff's employment is a pretext for discrimination. If a plaintiff succeeds in showing a prima facie case and presents evidence that a defendant's proffered reason for the employment decision was pretextual--i.e. unworthy of belief, the plaintiff can withstand a

30

summary judgment motion and is entitled to go to trial.  Randle v. City of Aurora, 69 F.3d 441,

451 (10th Cir. 1995).  In order to meet this burden, Plaintiff's evidence must be such that a

reasonable jury could conclude that the proffered nondiscriminatory reason for the employment

action is pretextual, that is, unworthy of belief. Hardy v. S.F. Phosphates Ltd Co., 185 F.3d 1076,

1079-80 (10th Cir.1999); see also Simms v. Oklahoma ex rel. Dep't of Mental Health and

Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir.1999); Anderson v. Coors Brewing Co.,

181 F.3d 1171, 1178 (10th Cir.1999).  A plaintiff need not always present additional evidence in

order to show pretext; a plaintiff's prima facie case may itself cast sufficient doubt on a

defendant's proffered nondiscriminatory reason to satisfy her burden of showing pretext.  English

v. Colorado Dep't of Corrections, 248 F.3d 1002, 1009 (10th Cir. 2001).  "Pretext can be shown

by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally

find them unworthy of credence and hence infer that the employer did not act for the asserted

non-discriminatory reasons."  Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).

A plaintiff may show pretext by providing evidence that he was treated differently from

other similarly situated, nonprotected employees who engaged in conduct of comparable

seriousness.  Kendrick, 220 F.3d at 1232.  Not every difference in treatment among employees

will establish discriminatory intent, and § 1981 does not make unexplained differences or even

irrational employment decisions illegal.  Id., 220 F.3d at 1232. Differences in treatment that are

explained by a nondiscriminatory motive will not sustain a claim of pretext.  Id.  When a plaintiff

seeks to demonstrate that a defendant's proffered nondiscriminatory reason is pretextual, he is

required to show that the tendered reason is not the genuine reason for the employment decision,

but rather was a disingenuous or sham reason.  English, 248 F.3d at 1010.  A challenge of pretext requires a court to look at the facts as they appeared to the person making the decision to terminate Plaintiff.  Kendrick, 220 F.3d at 1230-31.

In Kendrick, an African American man was hired by defendant as a truck driver.  220 F.3d 1220.  After being employed for two years, Mr. Kendrick was terminated after a confrontation with  his supervisor,  Mr. Tirrell.  Mr. Kendrick was driving through the gate at the employer's facility when Mr. Tirrell signaled him to stop.  Tirrell told Kendrick that he was driving too fast. Kendrick then drove off and parked the truck.  When Kendrick exited his truck, he was told to go to the front office.  When Kendrick arrived at the main office building, Tirrell told him to go to the front office.  Tirrell stood face-to-face with Kendrick, told Kendrick the front office wanted to see him immediately, then used language that invited Kendrick to initiate a physical confrontation with Tirrell.  Kendrick walked away, Tirrell yelled after him that he was fired, and Kendrick then cursed at Tirrell.

Kendrick then returned to the front office with a union steward.  Kendrick met with two center managers in addition to Tirrell.  Tirrell told the managers that Kendrick had physically charged at him, pushed him, and verbally abused him.  Kendrick refused to give his own side of the story.  The managers suspended Kendrick without pay then later terminated his employment for gross insubordination.  In attempting to show that defendant's proffered reason for terminating his employment was pretextual, Kendrick offered evidence that several other employees had cursed at their supervisors but had not been terminated.  Additionally, Kendrick offered his own affidavit and deposition testimony that he had not had any physical contact with Tirrell.

32

The Tenth Circuit found that none of these other incidents showed that employees similarly situated to Kendrick who had violated work rules of comparable seriousness had been treated differently than Kendrick.  Kendrick, 220 F.3d at 1232.  The Court found these were not incidents of comparable seriousness to the incident involving Kendrick.  Kendrick was fired because the facts known to the managers at the time Kendrick was terminated indicated that Kendrick had both cursed at and physically assaulted Tirrell.  Id.

Like the plaintiff in Kendrick, Plaintiff here attempts to show pretext by offering evidence that he was treated less favorably than similarly situated employees.  Plaintiff succeeds in showing that other employees were treated differently and were not members of Plaintiff's protected class. The Court assumes that, as fellow police officers, these other employees were similarly situated to Plaintiff in that they shared the same supervisor and were subject to the same standards governing performance and discipline.  However, Plaintiff offers no evidence other than conclusory statements in his own affidavit that these other employees engaged in conduct of comparable seriousness.  Like the managers in Kendrick, the facts known to the Board Members at the time Plaintiff was terminated indicated that Plaintiff's conduct was more severe than that of other CPD employees.  This was in large part based on Plaintiff's own testimony at the hearing that no other CPD employees had more involvement than Plaintiff in the illegal activity, and no other employees supplied satellite access cards to others within CPD.  The fact that Plaintiff now asserts that the facts are different than they appeared at the time of the hearing does not show pretext and Plaintiff has failed to meet his burden of presenting evidence from which a reasonable jury could conclude that Defendant's proffered nondiscriminatory reason for Plaintiff's termination is unworthy of belief.  Therefore, Defendant is entitled to summary judgment on Plaintiff's § 1981

claim.  As noted above, the reasoning for this determination applies to any § 1983 equal

protection claim Plaintiff may have stated in his Complaint.

IV      OTHER ARGUMENTS BY PLAINTIFF

        Plaintiff makes a couple of arguments throughout his brief that are hard to categorize in

terms of the claims to which these arguments apply.  Therefore, I briefly address them here

separately from the rest of this opinion.

        First, Plaintiff makes several references to the timing of his admittedly illegal conduct in

accessing satellite television without paying for it.  Apparently, all of this conduct occurred long

before his termination.  While Plaintiff appears to place much stock in this factual allegation, the

Court simply does not see the relevance.

        Second, Plaintiff iterates that his admittedly illegal conduct occurred off duty except in

one instance.  Plaintiff then proceeds to state that, under New Mexico law, a public employee

cannot be terminated for off-duty activities that are not rationally related to the employee's

competence, turpitude, or the proper performance of his duties.  Even if Plaintiff's statement of

the law is correct, he has an insurmountable problem in that he admittedly engaged in the illegal

conduct while on-duty on at least one occasion.   This Court finds absurd the argument that

Plaintiff's  illegal conduct does not relate to Plaintiff's turpitude, competence, ot the proper

performance of his duties as a police officer.  Furthermore, this Court finds untenable the

proposition that the State of New Mexico, or any other governmental entity,  would permit its law

enforcement officers to engage in illegal conduct without fear of losing their jobs so long as they

engage in criminal activity during off-duty hours.

34

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss, or in the

Alternative, Motion for Summary Judgment on Counts I, II, and III [Docket No. 48] is hereby

GRANTED and, for the reasons stated above, Plaintiff's claims are hereby DISMISSED.


_____
UNITED STATES DISTRICT JUDGE